2nd case on our docket this morning is 22-30393, Street v. BP Expl & Prod, Inc. Mr. Dominick? I'm Paul Dominick and I'm proud to represent these 40 brave workers who answered the call to clean up one of the worst environmental disasters in U.S. history. The basis of our appeal is very straightforward. The lower court judge in these 40 cases, Judge Ash, should have disqualified himself from hearing these cases to allow the workers to have a fair and impartial determination that could not be reasonably questioned. The federal statutory law is clear that a judge must disqualify himself or herself from any proceeding where a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter in controversy. Another basis for this appeal was the denial of a motion by Judge Ash to allow the completion of the 30 v. 6 deposition of BP. We are abandoning that argument for purposes of this appeal and would focus on the disqualification issue as being dispositive. Counsel, can I pause you on that for a second because I'm a little surprised. Are you conceding that Burns is the appropriate rule for, I'm sorry, not Burns, Bird is the appropriate rule for our circuit on the second issue? I think Bird was incorrectly decided, but I think the fact that the judge in this case should not have been involved at all is a mandatory requirement for him to be disqualified that Bird is really irrelevant in this particular case. Counsel, you brought both issues to us. There are a lot of these cases, as you know better than I. It would be helpful to have a ruling on all of this. We're having oral argument. We want to hear the issues that are so prevalent in these other cases. So even if you're not arguing it here today, it is in your brief and we may well address it. You may want to factor that in. Yes, Your Honor. Well, we've certainly briefed that issue and I think it was improper for the court in Bird and actually in the other issue case. It was a discretionary ruling by the court, by the underlying court. And in that review of the per curiam opinion, it was affirmed that decision to not allow the B6 deposition of BP to go forward prior to ruling on the dispositive motions. We believe for the reasons we cited in the brief that that was an error, but it's a discretionary issue. We understand that. In this particular case, what's not discretionary and what's mandatory is that the judge should have been disqualified in this case. He should have recognized that. He should have brought that issue up to the lawyers. He didn't and that's why we're here, because of his firm's involvement in the phase one trial. That was a trial on the merits of the case. That was a trial on the merits of this litigation as to liability. I understand the argument about why Judge Ash should have recused, but what's your best authority for the proposition that he needed to say a fact that by all accounts is in every conceivable public record about Judge Ash that one could find? Well, I don't know if it's authority. I know that as a lawyer that if I have a conflict or I think I have a conflict, I have to disclose those facts to my client and to tell them that I potentially have a conflict and whether that's a waivable conflict or not a waivable conflict, that's an issue we have to deal with. I think it would be a terrible rule for lawyers to have to investigate judges. There's no way to know what judges' financial situations are, to investigate their family's financial holdings, other potential issues that could raise conflict. I think the statute is clear that the obligation is on the judge to make those disclosures. So, and other judges in the cases did make those disclosures. There were at least three judges who made disclosures. One judge asked for waivers, and I think that was concerning his wife being involved in the Phase I trial. I assume that's Judge Afric? Yes, Your Honor. I mean, so, I mean, I can understand why it may not be self-evident that Judge Afric's wife represented Transocean. I can understand how that might not be easily understandable. But if you know anything about Judge Ash, you know where he used to work. He hasn't been on the district court that long, and you know that that firm was involved in some of the Phase I litigation. So I'm, it just, we have two different rules, right? One is, yes, of course, Section 455 is important, but the other one is that we don't want to have a situation where a party can lose summary judgment motion after summary judgment motion after summary judgment motion after summary judgment motion, and then after having lost a whole bunch of them, they're like, well, we don't like this judge, we want a new one. So now we're going to bring up a recusal issue that's existed for years before you joined the bench. Well, Your Honor, first, we didn't know, I didn't know anything about Judge Ash. I mean, I didn't investigate him. I assume that when a judge in the Eastern District of Louisiana is assigned to a case that he's going to be fair and impartial. I don't, I don't investigate his background. What happened was, when he issued his first rulings in this case, of course, we were surprised and disappointed. My paralegal, my industrious paralegal, decided to get on the Internet and see what the situation was with Judge Ash. As soon as we discovered that issue, we made the motion to disqualify. Judge Ash continued to issue orders after that motion was made and denied. In dozens of cases, he continued to issue orders. It was prejudicial to us, because his order was one of the very first orders in this case, and other judges followed on, have been citing to the language in his opinions. So I mean, that's kind of the situation where we are. It doesn't seem to me that this court would want to have a rule that requires lawyers to investigate the judges. I mean, we don't have a rule that requires my clients to go investigate me to see whether there's a conflict. The duty's on me to tell the client, and I don't see why a judge should have any less duty to disclose this conflict. I mean, the judge, it's interesting in his opinion, because Judge Ash never says in his that he disclosed these issues. He never says that he didn't recall this or that he was unaware of it. That's never in there. He also doesn't say that our clients were parties to the Phase I trial, and we were clearly parties to the Phase I trial. When you've got a judge, and you know, part of the problem here is how long this litigation has lasted, but we were clearly parties to the Phase I trial. Now, if you look at the findings of fact and conclusions of law by Judge Barbier, he held that the Phase I plaintiffs include the United States, the states of Louisiana and Alabama, and numerous private individuals, businesses, or other entities who have filed claims in Transocean's limitation action, civil action number 10-2771. That's in paragraph 31 of his findings of fact. If you go to Judge Barbier's pre-trial order, number 25, in paragraph 9, Judge Barbier says the filing of a short form in civil action number 10-888, which is the limitation action, shall be deemed to be a simultaneous filing of an answer and claim in civil action number 10-2771 and an intervention into one or more of the master complaints in that civil action number 10-2179. So it's undisputed, there's no dispute that we were parties, our clients were parties in the Phase I trial, and what you've got is a situation where Judge Ash's law firm, and Judge Ash was an equity partner, they were being paid to defeat the claims of our client in the Phase I trial. We didn't know that, but when we found that out, it was Section 28, Section 455, subsection B, as to, and that's a mandatory, a mandatory section for disqualification. And in fact, in Section E of that statute, it goes on to say that that's not a waivable, that's not a waivable conflict. So it's not even a waivable conflict. At that point, Judge Ash, who had the knowledge of the situation, he wants to point the finger at us for not digging this up. I think that's just putting the shoe on the wrong foot. Excuse me. A lot of what we have to do determines on what the meaning of matter and controversy is under 455. You know, the opposing counsel is brief on this, citing some cases with fairly large limit, situations that would allow claims to be made about conflicts fairly late in litigation. What do you say to that case law if they cite that the issues are not the same, what happened dealing with the company that Stone Pigman represented back in Phase I, and the issues that we're facing now? Right. Well, Your Honor, those cases, the Little Rock City case, the Little Rock City School District case, the United States v. Cleveland, they're not remotely similar to this particular case. Those were issues where it was pretty remote that the judge would have a conflict. The question was really more about whether it was a question of whether the judge was impartial under Section A as opposed to having an absolute disqualification under Section B of the statute. The key to those decisions, and it was recognized by the judge in the Little Rock case when he denied the motion to recuse, is he said that his decision was not on the merits of the claim. The decision in the Phase I trial is clearly on the merits of the claim. These claims could not proceed without liability determinations. Judge Ashe's firm represented a co-defendant. He successfully, their firm successfully got the co-defendant out of liability to our clients. We, when we filed the B-3 claims in 2017, we sued every defendant that was found to be liable in the Phase I trial. So the fact that you can represent a client and fight on the merits of liability, win that, and then later on when you become a judge get to rule on causation and damages is just, is totally inappropriate. It's the exact same matter and controversy. We don't know whether there was a joint defense agreement with BP, a common interest agreement. We don't know that. We don't know what conversations took place with Stone, Pigman and BP about how to defeat the claims of the plaintiffs. There's a lot of things we don't know, but that's why you have the mandatory rule that the judge has to disqualify themselves in that situation. And again, our point is that's the duty of the judge to tell us that. Other judges did. In this situation, there are plenty of judges in the Eastern District ruling on these cases. It's not like there weren't other judges that were familiar with the facts of these cases, could have easily sent it to another judge. And the fact that we lost before that judge, as the court's aware, we've lost before other judges in the Eastern District and we're not moving to recuse them. You know, when I was a young lawyer, I used to hear lawyers my age talk about, well, you know, I've been practicing law for so many years. And I said, I'll never make an argument like that when I was a young lawyer. But now that I'm my age and I've been practicing for 43 years, I can represent the court. I've never made a motion to disqualify or recuse a judge. This is just an intolerable situation for my clients. If the case goes back to the Eastern District and another judge takes the case and rules against our clients, that's fine. We come up here and we'll argue on the merits of that. But in this particular situation, when you've got a situation that deals with the merits of my client's case, dismissal of my client's case, it's not a situation that should stand. And we would ask that the court reverse the ruling and remand this to the Eastern District to be resolved, these cases to be resolved, probably in a similar manner as the other cases are being resolved, but at least resolved on a fair and impartial basis so we can come before this court and argue on the merits of the ruling as opposed to having to explain to my clients why a judge whose law firm fought against them on liability didn't want them to recover anything is able to rule on the case now on the ultimate issues in the case. No further questions. Thank you for your attention. Thank you, Your Honors, and may it please the court, George Hicks for the BP Appellees, counsel for the other appellees, Transocean and Halliburton are here as well and join in BP's arguments. In these appeals, Judge Ash, like every other judge to have addressed the issue in over 450 cases, excluded the general causation testimony of Dr. Gerald Cook as inadmissible under Daubert and granted summary judgment to the defendants. Appellants do not challenge the exclusion of Dr. Cook's report or argue that summary judgment was improper following its exclusion. Instead, appellants principally contend that Judge Ash should have disqualified himself because his former law firm represented a defendant, Cameron, during the phase one trial of the Deepwater Horizon litigation ten years ago. That argument fails three times over and at the very least does not demonstrate an abuse of discretion. First, appellants did not timely seek Judge Ash's disqualification. Instead, they waited until after Judge Ash began granting summary judgment against them over a year after the cases were remanded to him. But as Judge Ash found, appellants and their experienced Deepwater Horizon attorneys based in New Orleans cannot credibly claim that they became aware of the facts regarding Judge Ash's former firm and its involvement in the phase one trial over a year into proceedings before him. Appellants do not seriously dispute that finding and despite many opportunities to do so, appellants have never explained how or why they purportedly learned of those well-known facts only after he began ruling against them. Second, appellants' disqualification argument fails on the merits. Section 455B2 requires the same, quote, matter in controversy. And the phase one trial is not the same matter in controversy as appellants' B3 personal injury cases. The phase one trial... Can you explain the definition of that in our circuit? Your Honor, I don't think that this Court has come up with a definition for what matter in controversy means, but... Besides you give us, discuss some with your friend on the other side, same issues, whatever else, it does seem to me there's some strength to his response to that, that this fundamental nature of that decision that was made in the phase one trial that says so affected what has happened thereafter and that this Court has dealt with so often is significant. So what definition do you think is a fair definition for us to adopt? Your Honor, I think that I didn't see any response in their reply brief, but as far as what the definition of matter in controversy would be, I think it's narrower than case. It's narrower than related to because Congress did not use those words. I would look at what the other courts have said, whether it's the Eighth Circuit, whether it's some of the district courts in this circuit, about the same issues being at issue with the subsequent judge having to look at or address or decide those issues. And I very strongly disagree that the B3 cases have anything to do with the issues that were addressed and decided in phase one trial. The phase one trial concerned who caused the spill and the apportionment of liability. The B3 cases concern whether substances allegedly associated with the spill injured individual plaintiffs. And in ruling on the B3 cases, which indisputably do not involve Cameron but do involve other defendants found to be liable against whom the B3 plaintiffs have now alleged their claims and never alleged anything against Cameron, Judge Ash would not be required to address the merits of any phase one issue. And appellants contend that Judge Ash's firm sought to defeat their claims, but that's categorically untrue. Neither the B3 master complaint nor appellant's individual complaints alleged any claims against Cameron. But they certainly still do have claims against BP, Transocean, Halliburton, and they are free to bring those, but those will not require Judge Ash to address or decide anything that had to do with the matter in controversy in the phase one trial. And I think also, and the third reason for affirming the judgment below, is that any failure to disqualify himself would be harmless here. In more than 450 cases, without exception, 12 separate district court judges have excluded Dr. Cook's testimony because he cannot satisfy the requirements for expert general causation. This is a matter of fact. Was Judge Ash's ruling the first? And to some extent, the rest may have been relying on what Judge Ash wrote, or do we, do you know what the first such ruling excluding this testimony was? Your Honor, I don't know for a fact if his was the absolute first because there have been many cases raising this exact issue. But I do know that all of the other cases, I mean, no one is simply just relying on Judge Ash's decisions in this case. Judge Barbier, Judge Zaney, Judge Vance, I mean, they all have their own independent decisions explaining why Dr. Cook's testimony is excluded under Daubert for many different reasons. And that issue is prevalent in all these cases. And many of these cases have been appealed to this Court, and that issue is not being appealed. It is conspicuously not being appealed, even in the other cases involving this exclusion. And so I think it's, and it was not argued here as well. The appellants are not challenging the exclusion of Dr. Cook, and they're not challenging the granting of summary judgment after that exclusion because I think it's very clear that they could not do so. And it's very clear as well that this Court has a harmless error doctrine when it comes to disqualification. Well, let's go back up here. If a judge is mandatorily recused, for example, if I have a financial interest and I rule in a case and I shouldn't have, that harmless error has nothing to do with it. Your Honor, I disagree. I think your cases say exactly the opposite. Well, I'd like to see what those are because we've had this national issue about judges forgot or whatever that their wife or somebody owned something and they signed a joint motion to dismiss that came across their desk with 300 other things, and it's automatic reversal. Well, Your Honor, I would direct you to your Patterson decision, to your Traveler's decision, to the Roberts decision, all cases that we cited in our response brief to no reply by the appellants in their reply brief, all of which clearly establish a harmless error doctrine when it comes to disqualification under 455. And we explained what the case law is. We explained why that harmlessness applies here, and it satisfies all of the requirements for that because it would be de novo review anyway by this court. The 450 other cases across 12 district courts have reached the exact same conclusion, but the case law is very clear that there is a harmlessness component to disqualification. Again, I would refer you to Patterson, Traveler's, Roberts. They do not cite any case. They cite the Liljeburg Supreme Court case, but actually that case was cited by Patterson in saying that it's completely consistent with the Liljeburg Supreme Court case that there is a harmless error doctrine when it comes to disqualification. And of course, Patterson, Traveler's, Roberts all came after Liljeburg, so it's very clear that this court does have a harmlessness component. Those cases you're citing, all 455B to private practice matter and controversy cases, are they a more varied lot? Your Honor, I believe that I don't know whether all three of them are 455B, but they are certainly all 455 cases, and I don't think there's any basis for distinguishing between a 455A appearance of impropriety versus a 455B disqualification. I mean, it's all mandatory disqualification, but this Court has said that if it's very clear that the — that it would have reached the same decision, that that's the harmless component. And here, I think there is — and I don't really hear appellants to be disputing that there would be harmlessness here, because they have no response in their reply, and I have not heard anything today to — that they dispute that — that Dr. Cook's report would be admissible, and that's because in literally 450 cases, 12 judges have reached that same conclusion, independently. They're not just looking at Judge Ash and kind of rubber stamping it. They are looking at it because Dr. Cook does not satisfy the requirements for general causation testimony. He does not identify the dose needed to show the alleged condition in the general population, for a number of reasons that we, again, point out in our brief. Mr. Hicks, can I take you back to your second point, the one on the merits? Am I understanding the course of the litigation correctly, that Phase I determines the relevant defendants? That's where Cameron falls out. That's where Stone-Pigman is involved. And then the B3 complaint is filed after that against all of the defendants found in Phase I to be liable. Is that roughly what happened? There is a Master B3 — a little bit different, Your Honor. There is a Master B3 complaint even before the Phase I trial, and that was filed by the Plaintiff's Steering Committee, and it named defendants who the Plaintiff's Steering Committee, comprised of very experienced plaintiff's attorneys, named as defendants, and Cameron was not named in that Master complaint either. Even before the — Even before the Phase I trial. Would your position be different if the converse were true? That is, if — Mr. — if Cameron falls out because of the Phase I — the resolution of the Phase I trial in which Stone-Pigman is involved, would it then be appropriate for Judge Asch to recuse, or necessary, mandatory for Judge Asch to recuse? Because in the B3 case that he has before him, one would argue the only reason Cameron doesn't appear is because of the success of Stone-Pigman in Phase I. Your Honor, I actually don't think the position would change because I still think that the issues are completely different when it comes to who is responsible for the spill and the apportionment of liability among that. And then, once you have determined who those parties are, and that's locked in place, can the individual B3 defendants establish causation and damages against those defendants? I'm having trouble understanding why there would be a connection or overlap between the two of them if Stone-Pigman had gotten Cameron out of the case. Well, maybe if we step even one step further back, this would really elucidate the question. What if Cameron is in the original B3 complaint, Phase I happens, whatever, there's representation of Cameron by Stone-Pigman, we get to the B3 questions, which I take your point to be those are separate, they don't involve who's liable, it's just apportionment of damage. Then would Judge Asch — if Judge Asch is sitting and he sees Cameron as a defendant in the B3 cases, would he have to recuse them based on his former firm's representation? I think it would go back to whether that was the same matter in controversy. So it's not really the party, it's really what was — No, it's not a party. And I heard my friend refer to the fact that they were parties, and in your hypothetical, which again, is not this case, to be very clear, that even if it were a party, that's not what the statute says. And I think it is purposely written like that to ensure that there isn't just, you know, over — you know, over-cautiousness, if you will, because there is a requirement by judges to sit on cases that they are required to sit on. And I want to make one factual point about — and this goes a little bit back to timeliness — about this idea that the appellants, quote, didn't know anything about Judge Ash and his relationship or Stone-Pigman's activity with respect to the Phase I trial. On August 7th — and this is in our brief at page 32, but I want to push back on this because I saw it in their reply brief as well, where they said there is, quote, no evidence that counsel for appellants was aware of Judge Ash's conflict. And I heard it again today. On August 7th, 2012, there was a docket notice in the master MDL docket that talked about — very clearly said Stone-Pigman will continue to represent Cameron because there was some other law firms. And it was very clear. And that MDL docket was served on Mr. Dominick through the court's service. So there was notice to him that Stone-Pigman was representing Cameron. So I do not agree with the proposition that there was, quote, no evidence that counsel for appellants was aware of Judge Ash's conflict. And this Court's cases, including in the Deep Water Horizon context, the PTO 60 case, PTO 63, 66, 68, have all said that receiving that docket notice counts as knowledge to these experienced practitioners. So it is not true that there is — I don't think it's even incumbent upon us to have to show that there was evidence, because I think that Judge Ash's factual finding was very much correct and unchallenged on appeal, that it's not credible, that they would not have known that Judge Ash, you know, in all of his Senate judiciary materials and in the media reports, that they just simply would have no knowledge of his association with Stone-Pigman or Stone-Pigman's representation of Cameron. But to be very clear, there is evidence. There is notice that went to Mr. Dominick on the MDL docket served to him. A couple other points that I heard. He again referenced Judge Afric and Judge Afric's recusal. As we point out in our response brief, and I did not see a reply and I did not really hear an answer today, that's because Judge Afric's wife was an attorney representing Transocean, who is a party to the B-3 cases where the matter in controversy is active. I mean, there is — Transocean is a party to the B-3 cases. It is an appellee here. And so I think it's very distinguishable from the case of Judge Ash. I heard — my friends talked about how it is prejudicial to them. I think I've covered that in talking about the harmlessness, both with respect to this Court's case law being clear that there is a harmless error doctrine and the fact that on the facts and circumstances here the harmlessness, I think, is quite clear for the reasons we say in our brief. And I did not see a reply to that. And again, Mr. Dominick says that all he wants is for it to go back to a different judge and then if it's decided against them, well, then they'll bring up the appeal and they'll argue the merits. Well, number one, there are appeals before this Court involving the same exclusion brought by Mr. Dominick, but no one's raising this particular issue. No one's actually challenging it, because I think it's a very unassailable decision by 12 different judges. But also, he's able to argue the merits here. That's part of the response brief, and there was no reply to it. And I think for all the reasons we point out in our response brief, Dr. Cook's report is clearly inadmissible under Daubert. And all of this, by the way, is looked at with the overlay of an abuse of discretion standard, whether you're talking about the disqualification decision or whether you're talking about the exclusion of Dr. Cook's report. And at the very least, I think it's very, very hard to say that any of this was an abuse of discretion by Judge Ash, either in not disqualifying himself based on very, very well-known facts, based on facts that were actually known by appellant's counsel at the time, and based on the fact that Dr. Cook's report had numerous flaws in it. And I think that's a very, very hard thing to say. And so, you know, for those three separate and independent reasons, we think that there certainly was no abuse of discretion here. In my remaining time, I just want to talk a little bit about what I thought had been the fallback argument regarding the suspension of deadlines for the 30B6 deposition. This is the argument that Judge Ash should have suspended the case deadline so that plaintiffs in another case, that's the Torres Lugo case, could take a 30B6 deposition. That argument also has likewise been rejected hundreds of times by district courts without exception. Even more significant, they don't even address that issue in their reply brief after we pointed out. And of course, after the briefing finished, this court issued its Byrd decision less than a month ago that addresses this exact same issue. And I understand that that decision was unpublished, but I don't think this is a situation where you don't have to analogize anything. You don't have to draw an inference from Byrd to the facts here. It's the same facts. It's the same issue. And even if it's an unpublished decision, I think that that amply and readily covers it. And I think the fact that the appellants have abandoned that what I think their strategy is of filing a petition for rehearing. They've asked for an extension to this Friday to file a petition for rehearing regarding Byrd. And I guess we'll see what the petition says. We think that the petition would have no merit and that the Byrd decision would stand. But I think that that is, you know, I think they're staking everything on that fact, which I think just underscores that Byrd controls that second issue, in addition to reinforcing the harmlessness on the first issue. And if there are no further questions, we would ask that the judgments be affirmed, with the exception of several that should be dismissed for lack of jurisdiction, as we point out in our brief. Thank you, Your Honor. I would like to reply. Counsel for BP acts like these B-3 cases are something different from the Phase I trial. All claims involving the BP oil spill were subject to the Phase I trial on liability. That was what was at issue in that case. We're not here to talk about 450 other rulings. You know, I'm not keeping score on that. We're certainly going to be before this Court to discuss the merits and the science. There's no question about that. But the cases that are being cited that supposedly we didn't respond to concerning harmless error are not cases involving Section 455B, where there's a mandatory exemption requirement for recusal. If the question was asked about Cameron falling out of the case, whether that cures the conflict, and it doesn't. If you defeat the claims of the plaintiff, it's the representation that matters. It's not the result. So, you know, fighting to keep our clients from recovering from Stone-Pigman's client, that's the issue. It's not whether they won or they lost. The fact that they won, I mean, good for them, but that doesn't cure the conflict. There was a mention of a docket notice. I just have to say, there have been hundreds of thousands of docket notices that I've received in this case. I haven't read every one of them. I've been honest with the Court. I've been telling you that when, I didn't know the judge was part of the Stone-Pigman law firm. I had no idea until we got the first orders from the judge and a fair legal looked into it. That's the situation. It is an abuse of discretion when there's a mandatory requirement to disqualify for a conflict. He's aware of the facts. He knew the facts. We didn't know the facts. His failure to do so is an abuse of discretion. I think that's certainly something this Court does not want to sanction, the fact that if you have a conflict, you need to disclose it and get out of the cases. He had plenty of chances to do that, particularly on the additional cases after the conflict was brought to his attention. But instead, Judge Ash wanted to point the finger at us for not catching the conflict. I think that's inappropriate. I appreciate your attention. Thank you.